Mr. West. Thank you, Your Honor. May it please the Court, I'd like to reserve two minutes, if I may. Okay. As the Court is aware from the briefs, this case centers on a letter written by Plaintiff Robert Posey to his school district's chief administrative officer, setting out Mr. Posey's concerns about the administration of the high school where he worked, failing to follow school district policies with regard to reporting of drug and not so much drug but weapons problems at the school, other potential criminal activity, and otherwise safety and security concerns. And Mr. Posey's concern that the administration's failure to follow these school district policies was endangering the safety of the students at the school. And the question presented under Garcetti v. Ceballos is whether in writing this letter and subsequently in meeting privately at his home with the school district's top two administrators, Mr. Posey was engaging in work that he was paid to do, whether he was performing part of his job duties, as the district court held, or rather whether this was the kind of activity engaged in by citizens who do not work for the government. Counsel. In the Garcetti case and some of the other cases in this area, the Court seemed to have proceeded on the evidence by categorizing it as either all one or all the other. That is, it is either work-related or it is written in their private capacity. What do we do with a letter that touches on both of those things? What do we do when we have a mixed letter that seems to relate both to his work-related responsibilities and invokes certain things that are outside of his work responsibilities and, therefore, involves his concerns as a private citizen? Well, let me say two things, Judge Bivey. First of all, I think even to the extent that he's dealing with things within the general area of his work, that's not necessarily to Posey. It's a question of whether he's engaging in activity, whether he is reporting on something, making a report that he's required to report, or whether he's reporting to officials who are in his line of command, his chain of command. So I'm not sure I would necessarily agree with you that there's part of it that is what he was paid to do. But even if that is the case, I think what the cases that I've seen do, and there's a Fifth Circuit case that's on point that we cited in our 28J letter. I believe it's the Davis v. McKinney case that specifically says that we look at in cases in the case of speech that involves communications on different topics, we look at it at each and analyze each issue separately. And my recollection is that in that case, the Court specifically cited this Court's Freitag case for that position. There is authority in a slightly analogous area, in the area of whether this is speech on a matter of public concern, in the, I believe it's the Connick case, in which the Court does precisely that. It goes through the communication of the plaintiff and says this was not a matter of public concern, this was not a matter of public concern, this was not, but this question was a matter of public concern. And therefore, it held that there was at least part of what the plaintiff said was protected speech and acted accordingly. And I think the same approach is appropriate here. So now, by the time he goes forward with this letter, what precisely was his job? And I know it had shrunk considerably. His job had shrunk. He was basically a parking lot attendant. He was responsible for checking students who were leaving the parking lot. He had other concerns, other responsibilities, largely on an as-assigned basis, generally in the area of student safety issues. But I think he had then, because he did have some student safety issues, if he had sent his letter instead to the principal, Mr. Soper. Yes. Would he then have been within an official duty circumstance? Well, it depends what he would have said. But I think he said the same thing. Well, but, Judge McKeown, what he was saying in this letter is he was accusing Principal Soper of not, and other high school personnel, of not following the school district policies, that they were required to policy. Sometimes people say to their boss, you know, I'm concerned you're not following this policy. I think certainly. Would that be official? Certainly, if he had sent exactly the same letter. Well, I'm not even sure Mr. Soper, but at least there's some evidence that Mr. Soper had instructed him to report only to the vice principals or assistant principals and not even to Mr. Soper himself. But in any event, if he had sent it to the assistant principals or to Mr. Soper, it certainly would be a closer case. But this case, I think, really, is much more like what this Court found in the Freitag case, and we call it Freitag 2, the case after remand, which came out several months ago, in which the Court wrapped up the one issue that had been left there, in which the plaintiff had sent the letter to the vice principals, and the plaintiff had sent the letter to the head of the department, the California Department of Corrections, complaining about her supervisors and what was going on, what her supervisors were doing. And this Court, in affirming the district court's decision following remand, said that this was protected speech, and it pointed to a number of factors, including the fact that she was going beyond her immediate chain of command to the head of the department, she was complaining about what her supervisors were doing, and also factors that are also present here. The fact that this was written on her personal stationary using her home address, things like this. Here we have this is letter written by Mr. Posey on plain paper. It's addressed to Steve, no titles. It's assigned by him without any title. As in the Freitag case where the director of the department called the plaintiff at home to follow up, here the school district's chief administrator and another administrator visited Mr. Posey at his home outside working hours to follow up on this letter. This has all the characteristics of the issue that was decided in Freitag 2. And if I may also add one other case that has been decided that we cited in our 28-J letter but has not obviously been discussed in our briefs, and that's the Court's more recent decision in Marable v. Nitchman, in which the Court says this was an engineer on the Washington State ferries who was reporting allegations of corruption on the part of his supervisors, and he was going beyond his supervisors to report these allegations to higher-ups. And the Court says here the plaintiff's job was not to report. He had duties with respect to safety, but he did not have the duty of reporting his supervisor's corruption, disclosing his supervisor's corruption. Here it's not a matter of corruption. It's really more a matter of misfeasance and failing to abide by school district policies, but it's the same thing. In essence, as in Nitchman, it's that what Mr. Posey was doing in going to the top school district officials and pointing out to them, look, these people at Sandpoint High School are not following school district policies. You need to know about that. It's endangering student safety. This is the same kind of thing that any parent could have done. Mr. Posey was a little more informed because he had inside knowledge from being a public employee, but the Supreme Court has emphasized that that is precisely a reason why we protect the speech of public employees. If there was evidence that Mr. Posey was doing this in an effort to regain responsibilities at the school, because he was unhappy because responsibility had been taken away from him, so he grabs and says, look, look what's happened without me. I'm indispensable and I need another $15,000 a year and a new job promotion because all this stuff is happening as long as I'm not where I was a year ago. Would that change things? That makes it a little bit different. If that was really the sum and substance of what his letter was, and I will admit to you, Judge Bybee, there is a little bit of that in his letter. There is some of that. He complains about having his wings clipped and so forth. But if you look at his letter and go through it carefully in its entirety, he goes through about the first seven or eight pages before he ever gets into that stuff, talking about the school district's failure. I'm sorry. This goes back to my original question to you, which is what do we do when we have mixed motives? And it seems to me that you may want to say something to the effect of if you've got mixed motives, you survive a motion for summary judgment because the judge is simply or a jury is going to have to ferry those things out. Well, I certainly would agree with that. I would make that point and also the point that – three points, actually. That one, the point that I made earlier that you really look at each element of it separately and – Your basic contention here on appeal is that it was inappropriate to grant summary judgment. It was absolutely inappropriate to grant summary judgment. Should we return to the district court for a full-out examination of the facts? Yes. There are certainly, at the minimum, disputed issues of fact as well as law. We have to decide at this point whether the letter was job-related or wasn't job-related or which paragraphs or sentences were job-related and which weren't job-related as long as we thought that there was some of both. There are certainly some of both and certainly a lot of the kind of thing that a parent could easily have written. And so I agree with you, Your Honor. I think that's something for the district court to sort out on remand. Okay. Thank you. You've used up your time and then some. Thank you. Mr. Sebastian. Thank you, Your Honor. Mark Sebastian on behalf of Lake Ponderay School District, its board, and Mr. Sobert, if it may please the Court. The U.S. Supreme Court has stated in this that the proper inquiry, and this one is a practical one, not to be tied into specific and minutiae here. And looking at what this Court has done in Freytag and Marable is, look, first of all, what did Mr. Posey do? He was his job title is security specialist. This is his job description. It was the same both with his 2000 job description and the one that was later on revised by Sobert included assisting in inside and outside security, crime prevention, halls and ground supervision, and dealing with trespassers. Per Superintendent Berryhill's deposition, he noted that his job was focused on severe student conduct that would violate laws such as weapons or drugs. Obviously, Mr. Posey's got an interest in trying to limit what his job is, trying to characterize it as just being a work. What was his job? Can I just insert this and then have you? Here's what the principal said. He said, well, it's basically down to being a truancy officer, a parking officer, and a lost and found person. That's what he says the job was. That's the principal. Well, but you can't look at just the one revised. What we have here is a dispute over the change in the job description. Do you have an issue of fact then on what his job was even? No, because if you're looking, if the dispute is on the changes, all you have to do is look at what the changes were, what he was before. What he's wanting is what he was before. And we have the principal saying it kind of boiled down to his, you know, he's like a glorified parking lot attendant who has some security duties, right? That's what he is. Well, that may be correct. So how would, if that's the case, how would school-wide security issues then fall fairly within his official duties in terms of reporting policy violations? Well, I guess, as I indicated, what first of all, in his deposition, he indicated that he had maintained his duties in some of the other schools that he assisted at. So we're only looking at one school as opposed to his helping around the district. You know, the take I had on this after reading this stuff was it may be at the end of the day, after all of the facts are laid out before a trier of fact, bench trial, jury, whatever, that someone might come to the conclusion that the real reason he wrote this letter was to try to get his job back. But that's not apparent from the record that's before us. That's certainly not so clear that summary judgment could be granted. And there is some dispute about what his job was at the time he wrote the letter, whether the letter that he wrote in whole or part had to do with the job he had at the time he wrote the letter, what his motivation was for writing the letter. You know, for all we know, there could be a trial, and on cross-examination, he could admit the real reason I wrote this letter is to get my job back. It had nothing to do with my concern about what was going on at the school. I wanted to point out how bad things were because they'd cut my job back. And then it's a different kettle of fish. But how can we decide it based on this record? How is it appropriate for summary judgment? Well, if you look at the portion of the letter that was actually decided by the district court, he complains about the unsafe condition, and he says, I am unable to provide adequate security for our students and staff. I mean, he is saying right there that he thinks it's related to his job and he needs more power in order to effectuate his job. Well, there may be some element of self-interest in there, but it strikes me that this is a classic case of mixed motive. For one thing, under his prior job description, before the principal reduced everything, most of this letter might have come within his job responsibilities, but not under what the principal has now reduced him to. He's clearly writing about things that used to be within his job responsibilities but are no longer today. Now, this may be a plea to get his job back, but it could also be a way of a concerned citizen saying, look, yes, I've got additional access and additional information here, but our kids are in a really bad situation over here and you need to know what's going on. And if that's the situation, that seems to me that that does not come within Garcetti. Well, I would respectfully disagree. I mean, this obviously it's not dispositive what his job description was. Similarly, I don't believe it's dispositive. It's not dispositive to what? As to the issue of what his job was. But I think it's good indicia. Then it becomes an issue of fact, doesn't it? I mean, we either have to take what the principal says here or what's written on the paper, because if there's any more nuance to this thing, then it's beyond our ability to read it off of this cold record. Well, as I indicated, it's not dispositive, but I think it's a good indication of what his job was. That was what was officially down there. So if Judge Lodge had said in his summary judgment grant, I'm not sure what his job was, but there's a good indication that his job was X, that would be enough to sustain summary judgment? No. I think what we have here is a formal job description that is a family. Which is different from what the principal described as Judge McKeon read accurately, I think, from his deposition. Right? Right. Well, that may be different from what the principal characterized it as, but we're talking about what, when you look at the records. Is there anyone in the chain of command within the school district in a better position to accurately describe what this man's job was than the principal? Well, the superintendent could more accurately describe it. Did he testify? We're not. Did he testify? Yes. Was his deposition taken? Yes. What did he say? That was what Superintendent Berryhill said, that his job focused on severe student conduct that would violate law, and then gave an example such as weapons or drugs. So there's a difference between the job description the superintendent gave and the one the principal gave? No, because the revised job description was made by the principal. That's also his statement of what his job was. What we have here are two statements that need to be read together, not in conflict. Okay. All right. So after looking at what Mr. Posey did, we look at what did he complain about. And, again, as I indicated, the court focused in on basically the thesis for his whole letter, which was I'm unable to provide adequate security for our students and staff, and I'm hoping that he writes this letter. And he goes through and he basically points out all the things that he has done and discovered in this. And we get to the very end of his letter. And he goes on about how I have hundreds of pages of documentation, and he consistently goes in, you know, I'm doing this at the risk of being terminated and so on. I mean, he's recognizing this as he's writing this to his employer. These are all related to the security and safety of students. All of the comments are throughout this document. So he's writing about his job. I mean, it may at some point, you may get into the issue of what was constitutionally protected or not. But at this part, all we're looking at is whether he's writing as a citizen or not. And that's everything in there relates back to either himself or his job in particular. Well, it's we've learned from other cases it's not just whether it relates to in the sense of whether it's part of his job responsibility to report these kind of violations. That seems to me to be the unanswered question in this case where the rubber hits the road. And that is if it's just related to your job, then we wouldn't have a problem with any of these cases. The question is whether this reporting is part of your job duty. And that's where I'm not sure where the record stands on that point or whether it's a factual question. Well, I mean, in Freytag, you know, I think this Court actually did address that issue, or at least it was part of their decision. We had a prison guard that was talking about sexual harassment, well, sexual behavior by the prisoners, and they weren't being reported and dealt with, she felt, effectively. She went ahead and complained to her supervisors. Nothing was begun. She went over them to, and this is similar to what we have here, she went over them to the warden and the assistant warden. This is akin to him going to not the superintendent. He went one level lower. He went to Mr. Batenschlag, I hope I'm pronouncing his name right, who was, as it reveals in the record, his duties specifically were to deal with certified employees. So we have, it's a similar situation. And you could say just as well with Freytag, she didn't have the responsibility to go ahead and report lapses by her supervisors, which essentially was what her communications were, lapses by her supervisors would be on her job duty. But the Court didn't read it that narrowly. Okay. But if you look at it, it was tied in. Thank you. Thank you for your time. Thanks both sides for their argument. The case that's argued will be submitted for decision, and the Court will stand adjourned. All rise. This Court's discussion stands adjourned.
judges: Hawkins, McKeown, Bybee